Markman, J.
At issue in this case is whether the trial court properly assessed 15 points for offense variable (OV) 10. OV 10 should have 15 points assessed when the defendant has engaged in “predatory conduct” to “exploit[] . . . a vulnerable victim.” MCL 777.40(1)(a). Contrary to the Court of Appeals’ holding, in order to assess 15 points for OV 10, the defendant’s preoffense conduct only has to be directed at “a victim,” not any specific victim, and the victim does not have to be inherently vulnerable. Instead, a defendant’s “predatory conduct,” by that conduct alone (eo ipso), can create or enhance a victim’s “vulnerability.” In this case, defendant engaged in “predatory conduct” to “exploitü ... a vulnerable victim” because, before defendant and his cohort robbed the victim, they were lying in wait, armed with *455 two BB guns and a knife, and hidden from the victim, who was by herself at night in an otherwise empty parking lot. Because the trial court properly assessed 15 points for OV 10, we reverse the judgment of the Court of Appeals and reinstate the trial court’s judgment of sentence.
I. HISTORY
This case arises from events that occurred in February 2005 in the Orchards Mall parking lot in Benton Harbor. The victim, Jackie Flanagan, drove to the mall and parked her vehicle in front of the Sears store where she intended to shop. The victim chose a well-lit parking spot because it was dark outside. When she got out of her vehicle, she was approached by defendant and his cohort, who were 15 and 16 years old respectively. One of the boys pointed a BB gun at the victim’s face and demanded her purse, wallet, and car keys, while the other boy put a BB gun to the back of the victim’s head. The victim gave the boys her cell phone and car keys but had trouble getting her purse off her shoulder. Defendant’s cohort pushed the victim to the ground and cut the purse from her shoulder with a utility knife. Both boys then fled the scene in the victim’s vehicle. The next day, police recovered the victim’s vehicle and found two BB guns inside it. Further investigation led police to defendant and his cohort.
Defendant was charged with armed robbery and carjacking. He entered a plea of guilty of armed robbery, MCL 750.529, pursuant to a plea bargain offered by the prosecutor.[1] At sentencing, defendant challenged the scoring of OV 10, arguing that it was incorrectly scored at 15 points. OV 10 addresses “exploitation of a vulner *456 able victim” and requires “predatory conduct” for the assessment of 15 points. MCL 777.40(l)(a). Defendant argued that there was nothing “predatory” about this robbery because it was a “random” act. The trial court rejected defendant’s argument and concluded that predatory conduct was established for purposes of scoring OV 10 at 15 points because defendant was lying in wait in the parking lot where he robbed the victim. Defendant’s recommended minimum sentence range under the sentencing guidelines was calculated as 126 to 210 months. The trial court sentenced defendant to 180 months to 600 months in prison.
On appeal in the Court of Appeals,[2] defendant argued that the trial court had improperly scored OV 10 and that this error affected his sentencing guidelines range.[3] In a published opinion per curiam, the Court of Appeals reversed defendant’s judgment of sentence and remanded for resentencing, concluding that OV 10 should have been scored at zero points, not at 15 points. People v Huston, 288 Mich App 387, 397-398; 794 NW2d 350 (2010). The Court of Appeals held that the “vulnerability” of a victim must be determined by characteristics personal to the victim. Id. at 395-397. The Court of Appeals acknowledged that at the time of the offense it was dark outside and the victim was alone, which may have made the robbery easier to carry out. Id. at 397. Nevertheless, the Court of Appeals reasoned that those *457 facts failed to establish that the victim was personally or inherently vulnerable and, therefore, that the trial court erred by assessing 15 points for OV 10. Id.
This Court granted the prosecutor’s application for leave to appeal in order to consider whether the “vulnerability” of a victim, for purposes of scoring OV 10, is limited to the victim’s personal characteristics. People v Huston, 488 Mich 876 (2010).
II. STANDARD OF REVIEW
The interpretation and application of the legislative sentencing guidelines, MCL 777.1 et seq., involve legal questions that this Court reviews de novo. People v Morson, 471 Mich 248, 255; 685 NW2d 203 (2004).
III. ANALYSIS
MCL 777.40 provides:
(1) Offense variable 10 is exploitation of a vulnerable victim. Score offense variable 10 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
(a) Predatory conduct was involved....................15 points
(b) The offender exploited a victim’s physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status .......................................................................................10 points
(c) The offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious.............................................................5 points
(d) The offender did not exploit a victim’s vulnerability .......................................................................0 points
(2) The mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerabilily
*458 (3) As used in this section:
(a) “Predatory conduct” means preoffense conduct directed at a victim for the primary purpose of victimization.
(b) “Exploit” means to manipulate a victim for selfish or unethical purposes.
(c) “Vulnerability” means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation.
(d) “Abuse of authority status” means a victim was exploited out of fear or deference to an authority figure, including, but not limited to, a parent, physician, or teacher. [Emphasis added.]
A. “PREDATORY CONDUCT”
Contrary to the Court of Appeals’ and the dissents’ contentions, MCL 777.40(3)(a) does not define “predatory conduct” to mean preoffense conduct directed at the victim; instead, MCL 777.40(3)(a) defines “predatory conduct” to mean “preoffense conduct directed at a victim .. . .”[4] (Emphasis added.) As this Court has explained:
“Traditionally in our law, to say nothing of our classrooms, we have recognized the difference between ‘the’ and ‘a.’ ‘The’ is defined as ‘definite article. 1. (used, esp. before a noun, with a specifying or particularizing effect, as opposed to the indefinite or generalizing force of the *459 indefinite article a or an)... Random House Webster’s College Dictionary, p 1382.” [Robinson v Detroit, 462 Mich 439, 461; 613 NW2d 307 (2000) (citation omitted).]
Because the Legislature chose to use the words “a victim” in MCL 777.40(3)(a), we must construe MCL 777.40(3)(a) to mean a victim, rather than the victim. That is, we must take care not to construe MCL 777.40(3)(a) as requiring that the defendant’s preoffense predatory conduct have been directed at one particular or specific victim, but instead as requiring only that the defendant’s preoffense predatory conduct have been directed at a victim.[5]
Furthermore, from a policy perspective, we are unsure why the Legislature would want a defendant who directed his preoffense conduct toward a specific victim, say, for example, at his ex-girlfriend, to be sentenced more severely than the defendant who directed his preoffense conduct at the community at large by lying in wait, armed, in a parking lot at night, waiting for the first random person to come along so that he or she *460 could be criminally victimized. Who poses the greater threat to society — the defendant who seeks revenge on his ex-girlfriend, and thus who directs his preoffense conduct only toward a single person, or the defendant who seeks opportunistically to rob the first vulnerable person within the community at large who happens along? Certainly, the latter instills greater fear and apprehension in more people and has a greater impact on society. Indeed, this case illustrates how this fear is diffused throughout the community. The victim here felt vulnerable even before the attack and testified that she specifically “circled the parking lot” to “park[] safely under a street lamppost. . . .” Unfortunately, her fears were justified, and defendant’s preoffense conduct effectively made a victim not only of this victim, but all members of the larger community, each of whom must take precautions against criminal behavior and each of whom may have reasonable apprehensions concerning the threat of criminal conduct being directed toward them.
This also explains why the Legislature chose to assess 15 points for “predatory conduct,” the highest number of points that can be assessed under OV 10. The hierarchical range of points that may be assessed under OV 10 extends from zero to 15 points. Zero points are to be assessed when “[t]he offender did not exploit a victim’s vulnerability.” MCL 777.40(1)(d). Five points are to be assessed when “[t]he offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious” — things that are largely within the victim’s own control.[6] MCL 777.40(1)(c). Ten points are to be assessed when “[t]he *461 offender exploited a victim’s physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status”— things that are largely outside of the victim’s control. MCL 777.40(l)(b). Finally, 15 points are to be assessed when “[p]redatory conduct was involved” — something that is always outside of the victim’s control and something that may impact the community as a whole and not only persons with already-existing vulnerabilities. That is, we can only interpret the Legislature’s hierarchical approach in OV 10 as indicating its own view that “predatory conduct” deserves to be treated as the most serious of all exploitations of vulnerability because that conduct itself created or enhanced the vulnerability in the first place, and it may have done so with regard to the community as a whole, not merely with regard to persons who were already vulnerable for one reason or another. By its essential nature, predatory conduct may render all persons uniquely susceptible to criminal exploitation and transform all persons into potentially “vulnerable” victims. Only in this way can MCL 777.40(l)(a) be understood as connected with MCL 777.40(l)(b) through (d).
The fact that the Legislature has directed sentencing courts to assess 15 points, the highest number of points that can be scored under OV 10, for “predatory conduct,” also strongly suggests that the Legislature did not intend “predatory conduct” to describe any manner of “preoffense conduct.” Indeed, if that were the case, 15 points could be assessed under OV 10 in almost all cases because there will almost always be some manner of preliminary or “preoffense conduct.” Few criminal offenses arise utterly spontaneously and without forethought. Most importantly, reading MCL 777.40(1)(a) as requiring 15 points to be assessed for OV 10 in every case would essentially render nugatory MCL *462 777.40(1)(b) through (d), the provisions directing when OV 10 requires a score of 10, 5, and zero points respectively, “and it is well established that ‘[i]n interpreting a statute, we [must] avoid a construction that would render part of the statute surplusage or nugatory’ ” Robinson v City of Lansing, 486 Mich 1, 21; 782 NW2d 171 (2010) (citation omitted) (alteration in Robinson). To enable MCL 777.40(1)(a) whenever there is any “preoffense conduct” would effectively ensure that MCL 777.40(1)(b) through (d) would never be enabled. Thus, to give meaning to the entirety of MCL 777.40(1), and out of recognition that 15 points for “predatory conduct” constitutes the highest number of points available under OV 10 and that “preoffense conduct” is being used to define “predatory conduct,” we conclude that the latter term does not encompass any “preoffense conduct,” but rather only those forms of “preoffense conduct” that are commonly understood as being “predatory” in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or “preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.”[7] People v Cannon, 481 Mich 152, 162; 749 NW2d 257 (2008). This is the only interpretation that gives meaning to all the paragraphs *463 of MCL 777.40(1), while respecting the obviously hierarchal character of those provisions. In short, “preoffense conduct” must be read in context. Robinson, 486 Mich at 15 (statutory language “cannot be read in isolation, but must be read in context”).
In the instant case, although defendant may not have been lying in wait for a specific victim, he was unquestionably lying in wait for a victim. Therefore, his preoffense conduct was directed at “a victim.” MCL 777.40(3)(a). In this regard, it is helpful to consider why defendant was lying in wait, armed and hidden from view. And the answer to this question is quite obvious — he was doing this in order to place himself in a better position to be able to successfully rob someone in the parking lot. That is, defendant’s preoffense conduct of predatorily lying in wait, armed, and hidden from view was directed at “a victim.” Although defendant may not have known who his victim was going to be when he first undertook these actions, that does not undermine the fact that he was lying in wait for “a victim,” and thus that his preoffense conduct was directed toward such “a victim.”
In addition, defendant’s preoffense conduct was “for the primary purpose of victimization.” MCL 777.40(3)(a). As Cannon, 481 Mich at 161, explained, “ ‘[victimize’ is defined as ‘to make a victim of.’ ” (Citation omitted.) And “victim” is defined as “ ‘a person who suffers from a destructive or injurious action Id. (citation omitted). Therefore, “predatory conduct” under the statute is behavior that is predatory in nature, “precedes the offense, [and is] directed at a person for the primary purpose of causing that person to suffer from an injurious action . ...” Id. In this case, before the robbery, defendant laid in wait while armed and hidden from view for the primary *464 purpose of eventually causing a person to suffer from an injurious action, i.e., an armed robbery. In light of these facts, defendant’s preoffense conduct constituted “predatory conduct” both under the statutory definition of this phrase and according to common understanding under which lying in wait constitutes quintessential “predatory conduct.”
B. “VULNERABILITY”
The Court of Appeals concluded and the dissent agrees that the victim was not “vulnerable” because there was nothing in the record to indicate that she suffered from an inherent or personal vulnerability. Huston, 288 Mich App at 395-396. We disagree. The Court of Appeals’ and the dissent’s analyses limit “vulnerability” of a victim to inherent or personal characteristics of the victim, and such a limitation is contrary to the express language of MCL 777.40. We read the statute as contemplating vulnerabilities that may arise not only out of a victim’s characteristics, but also out of a victim’s relationships or circumstances.
MCL 777.40(1)(b) and (c) explicitly define characteristics, relationships, and circumstances that may make a victim susceptible to injury, physical restraint, persuasion, or temptation.[8] The specified factors listed in subdivisions (b) and (c) relate to the inherent characteristics of the victim, as well as the victim’s relationships and circumstances.
*465 Using the statutory language as guidance, Cannon listed factors to be considered by a sentencing court when determining whether a victim was vulnerable. Cannon, 481 Mich at 158-159. Those factors include the expressly listed characteristics, relationships, and circumstances identified in subdivisions (b) and (c), which are:
(1) the victim’s physical disability, (2) the victim’s mental disability, (3) the victim’s youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. [M][9]
Both Cannon and the express language of MCL 777.40(2) instruct that the mere existence of one of the listed factors does not automatically render the victim “vulnerable” for purposes of scoring OV 10. Id. at 159.
In contrast to subdivisions (b) and (c), subdivision (a) does not list any specific characteristics, relationships, or circumstances of the victim. Rather, that subdivision merely requires that “[p]redatory conduct was involved” in order to assess 15 points for OV 10. MCL 777.40(1)(a). Recognizing this notable distinction, Cannon explained that the factors it enumerated were not meant as an exhaustive list for purposes of finding “vulnerability.” Cannon, 481 Mich at 158 n 11. Instead, Cannon clarified that
*466 [t]he absence of one of these factors does not preclude a finding of victim vulnerability when determining whether it is appropriate to assess 15 points for predatory conduct. Rather, the evidence must show merely that it was readily apparent that the victim was susceptible to injury, physical restraint, persuasion, or temptation. [Id.]
Accordingly, to assess 15 points for OV 10, a court must find that an offender engaged in predatory conduct and exploited a vulnerable victim, using only the statutory definition of “vulnerability.” Again, MCL 777.40(3)(c) defines “vulnerability” as the “readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation,” and such vulnerability may or may not arise from the explicitly listed characteristics, relationships, and circumstances set forth in subdivisions (b) and (c). The statute does not mandate that this “susceptibility” be inherent in the victim. Rather, the statutory language allows for susceptibility arising from external circumstances as well.
In the instant case, the victim was alone in the dark, and defendant and his cohort outnumbered her. Moreover, a key fact that greatly increased the “vulnerability” of the victim in these specific circumstances was that defendant and his cohort were lying in wait for her, armed and hidden from her view. By lying in wait for a victim in the manner that defendant did here, he made the victim more “susceptib[le] ... to injury [or] physical restraint,” i.e., more “vulnerable.” MCL 777.40(3)(c).[10] *467 That is, just as the defendant in People v Apgar, 264 Mich App 321; 690 NW2d 312 (2004), enhanced the victim’s “vulnerability” by forcing her to smoke marijuana before he sexually assaulted her; and the defendant in People v Kimble, 252 Mich App 269; 651 NW2d 798 (2002), enhanced the victim’s “vulnerability” by following her and waiting until she pulled into her driveway before striking; and the defendant in People v Mahon, 485 Mich 971; 774 NW2d 691 (2009) (Corrigan, J., concurring), enhanced the victim’s “vulnerability” by waiting for the bar to close and the victim to exit the bar before he assaulted her, the defendant in the instant case enhanced the victim’s “vulnerability” by lying in wait while armed and hidden from view before he robbed her.
We conclude that a person walking alone at night in a parking lot while two armed people hidden from that person’s view lie in wait to rob that person is a “vulnerable” victim because he or she would have a “readily apparent susceptibility ... to injury [or] physical restraint. . . .” MCL 777.40(3)(c). This conclusion avoids the problem that the dissent is concerned about of characterizing all victims of crimes as “vulnerable” victims, while at the same time it recognizes that a defendant’s “predatory conduct” can establish or enhance the “vulnerability” of a victim.[11] Finally, defendant unquestionably “exploited] ” the *468 “vulnerable victim” in this case because he “manipulate [d] [her] for selfish or unethical purposes” by lying in wait for her and then robbing her of her purse and car.[12] MCL 777.40(3)(b). As this Court explained in Cannon, 481 Mich at 159, “predatory conduct” “inherently involves some level of exploitation,” and thus “points may be assessed under OV 10 for exploitation of a vulnerable victim when the defendant has engaged in conduct that is considered predatory under the statute.”
IV. CONCLUSION
For these reasons, we conclude that defendant engaged in “predatory conduct” to “exploit[] ... a vulnerable victim,” MCL 777.40(1)(a), and thus that the trial court did not err by assessing 15 points for OV 10. For a trial court to assess 15 points for OV 10, the defendant’s preoffense conduct only has to be directed at “a victim,” not any specific victim, and the victim does not have to be inherently vulnerable. Instead, a defendant’s “predatory conduct,” by that conduct alone (eo ipso), can create or enhance a victim’s “vulnerability.” Therefore, we reverse the judgment of the Court of Appeals and reinstate the trial court’s judgment of sentence.
Young, C.J., and Mary Beth Kelly and Zahra, JJ., concurred with Markman, J.

 Defendant’s cohort also entered a guilty plea to armed robbery.

 The Court of Appeals originally denied defendant’s application for leave to appeal. However, this Court remanded the case to the Court of Appeals for consideration as on leave granted in light of People v Cannon, 481 Mich 152; 749 NW2d 257 (2008). People v Huston, 485 Mich 885 (2009).

 If OV 10 had been scored at zero points instead of 15 points, defendant’s total OV score would have been 51 points, which would decrease his OV level from IV to III. This reduction would have made defendant’s minimum sentence range 108 to 180 months, instead of 126 to 210 months. See MCL 777.62.

 We recognize that in Cannon, 481 Mich at 162, this Court indicated that the defendant’s preoffense conduct must be directed at “one or more specific victims . . . .” However, this question was not at issue in Cannon, there was no analysis concerning this issue in Cannon, and it was clearly dictum in Cannon. See Wold Architects & Engineers v Strat, 474 Mich 223, 232 n 3; 713 NW2d 750 (2006). Contrary to the dissent’s contention, it was clearly dictum because it was not “essential to [the] determination of the case in hand,” id. (quotation marks and citations omitted), whatever Cannon’s desire “to provide the correct framework for lower courts to apply when deciding whether to assess points for predatory conduct under OV 10,” post at 484 n 7.

 The dissents conclude that the defendant’s preoffense predatory conduct must he directed at one particular or specific victim because “vulnerability” is defined as a “readily apparent susceptibility... to injury, physical restraint, persuasion, or temptation,” MCL 777.40(3)(c), and “[i]t cannot become ‘readily apparent’ to an offender that a victim is susceptible before the offender identifies the victim.” Post at 473 (Hathaway, J., dissenting in part) (emphasis in the original). We respectfully disagree. If a defendant hides in the hushes of a mall parking lot at night with the intention of waiting there until a woman who is by herself parks nearby so that he can rob her, it is most certainly “readily apparent” to that defendant that the victim is susceptible before he even identifies the victim. Indeed, that is the very reason the defendant is hiding in the bushes at night in the first place — to render the victim more susceptible to robbery. And, contrary to the dissents’ contentions, we are not “deleting] the phrase ‘directed at a victim’ ” from the statute. Post at 485 (Cavanagh, J., dissenting). Instead, we are simply refusing to rewrite the statute to read “directed at one or more specific victims,” as do the dissents. Post at 485 (Cavanagh, J., dissenting).

 We, of course, recognize, as does the dissent, post at 482 n 2, that these things are not always within the victim’s own control.

 Given that we expressly hold that only genuinely predatory conduct, such as lying in wait and stalking, can justify assessing 15 points for OV 10, our construction of MCL 777.40(3)(a), contrary to the partial dissent’s contention, does not “lackf] any limitation on the circumstances in which a court may assess the highest number of points possible under OV 10.” Post at 475. And given that we specifically hold that “preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection” is not “predatory conduct,” the partial dissent is simply wrong to assert that “under the majority’s standard today, such ‘run-of-the-mill planning’ could be used to assess 15 points for OV 10.” Post at 478 n 26; see also post at 475 n 19 (“[I]t is unclear... whether the mere planning of a crime would suffice.”).

 Subdivision (b) directs the assessment of 10 points in the expressly limited instances of when the offender exploited “a victim’s physical disability, mental disability, youth or agedness, or a domestic relationship, or [when] the offender abused his or her authority status[.]” Subdivision (c) directs the assessment of 5 points in the expressly limited instances of when the offender exploited “a victim by his or her difference in size or strength, or both, or [when the offender] exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious[.]”

 We disagree with the dissent that all of these factors are “independent of the victim’s external physical environment.” Post at 482. The existence of a domestic relationship, whether the offender abused his or her authority status, and whether the offender exploited a victim by his or her difference in size or strength or both are clearly not. Rather, they are at least in part dependent on the offender’s relationship to the victim, the offender’s authority status over the victim coupled with the offender’s decision to abuse this status, and the offender’s size or strength.

 Although the partial dissent is “unclear... whether the mere planning of a crime would suffice” to establish “genuinely” predatory conduct, post at 475 n 19, it is worth emphasizing that lying in wait is not the equivalent of the “mere planning of a crime.” See, e.g., Webster v Woodford, 369 F3d 1062, 1073 (CA 9, 2004) (“[L]ying in wait requires three elements: concealment, watching, and waiting.”). Each of these elements, when joined together, has the potential to render any member of the public vulnerable to criminal activity, as the perpetrator by such *467 conduct both strengthens his own hand and weakens that of the public, until the former believes that his opportunity to victimize the latter has been optimized. Lying in wait describes the kind of conduct that in the context of a homicide would be sufficient to satisfy the elements of first-degree murder. See MCL 750.316(1)(a) (“Murder perpetrated by... lying in wait” is “first degree murder.”).

 The dissent is concerned that under our approach “all victims [are] vulnerable.” Post at 483. However, what the dissent does not seem to appreciate is that we only find the victim here to be “vulnerable” because defendant and his cohort engaged in “predatory conduct” that trans *468 formed an “ordinary” victim into a “vulnerable” victim. Obviously, not all, or even most, defendants engage in “predatory conduct,” and, thus, not “all victims [are] vulnerable.”

 Contrary to the partial dissent’s contention, post at 474-475 n 18, OV 10 could not be assessed at 15 points under our approach if the defendant engaged in preoffense predatory conduct but was arrested before he could commit the intended offense because OV 10 requires “exploitation of a vulnerable victim.” MCL 777.40(1).