COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 27, 2015

       Plaintiff-Appellee,

v

No. 318872
Isabella Circuit Court

JAMES ALLEN CHANDLER,

LC No. 13-000191-FH

       Defendant-Appellant

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

No. 318873
Isabella Circuit Court

JOHN ANTHONY MERCHANT,

LC No. 13-000192-FH

       Defendant-Appellant.

Before: SHAPIRO, P.J., and GLEICHER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Following a joint trial before a single jury, defendants were each convicted of second-degree home invasion, MCL 750.110a(3), and conspiracy to commit second-degree home invasion, MCL 750.157a. Merchant now challenges the sufficiency of the evidence supporting his home invasion conviction, and both defendants challenge the scoring of several offense variables underlying their sentences. We discern no errors and therefore affirm.

I. BACKGROUND FACTS

Defendant Merchant worked at a Meijer store with Cheston Sochacki. The two developed a friendship through their shared love of coin collecting. On four or five occasions, Sochacki invited Merchant to the home he shared with his girlfriend, Lena Pyle. During these visits, Merchant and Sochacki would discuss coins and engaged in some coin trades and sales. Sochacki testified that although Merchant usually stayed in the living room while he retrieved his

-1-

coins from their storage places in his bedroom, there was an unobstructed view from the living room into the bedroom.

Several months after this friendship developed, Sochacki and Pyle planned a trip to Alaska. Sochacki told Merchant about this trip. Sochacki testified that Merchant repeatedly asked him the dates of his vacation. Merchant also had access to Sochacki's work and vacation schedule at Meijer. While Sochacki and Pyle were in Alaska, someone broke out a basement window and entered their home. Once inside, the culprits stole Sochacki's coin collection, an Xbox video game console, and a laptop computer. The investigating officer recalled at trial that the house did not resemble the typical scene of a breaking and entering, as it was unusually neat and orderly. The officer deduced that the offender knew what he was looking for and where to find it.

Investigation revealed that Merchant planned the breaking and entering for the purpose of stealing Sochacki's coin collection. Merchant involved his roommate/younger half-brother, defendant Chandler. Chandler contacted two acquaintances, Dustin Brown and Jaylen Miles, for assistance.[1] Brown testified that he and Miles actually broke into Sochacki's house and stole his coins at Chandler's request. Brown described that Chandler drove him and Miles to the scene and gave them specific directions before they committed the offense. Trial evidence suggested that Merchant provided his vehicle to Chandler for this purpose. Brown testified further that he and Miles turned the coins over to Chandler, but kept the Xbox and computer as their share of the loot. Coins matching the description of those stolen were found inside a safe in Merchant's closet. Merchant admitted during the investigation that he planned the breaking and entering to steal the coins, but claimed that he had a change of heart before the robbery and contacted Brown and Miles to call it off. By the time of trial, however, Merchant denied making this admission and the truth of the underlying confession.

## II. SUFFICIENCY OF THE EVIDENCE

In Docket No. 318873, defendant Merchant appeals the sufficiency of the evidence supporting his home invasion conviction. Notably, Merchant does not challenge his conspiracy conviction, conceding that sufficient evidence supported his role in planning the offense. He merely argues that he could not be convicted of the principal offense because he did not take an "active role" in the home invasion. We review de novo challenges to the sufficiency of the evidence. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). In doing so, we must review the evidence in the "light most favorable to the prosecution and determine if any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* (quotation marks and citation omitted). Here, the prosecution presented sufficient evidence to convict defendant of the underlying home invasion on an aiding and abetting theory.

---

[1] According to the Michigan Offender Tracking Information System, Brown and Miles have both been convicted and sentenced in relation to this offense.

Second-degree home invasion is proscribed by MCL 750.110a(3) as follows:

A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the second degree.

To prove a second-degree home invasion charge, the prosecution must establish beyond a reasonable doubt that the defendant (1) committed a breaking and entering of a dwelling or entered without permission, (2) with the intent to commit a felony, larceny, or assault inside, or (3) actually committed a felony, larceny, or assault while entering, inside, or leaving the dwelling. *Id.*

The evidence is uncontroverted that only Brown and Miles entered the victims' dwelling. However, under Michigan law, a defendant's role in planning and encouraging the crime is sufficient to support a conviction for the principal offense: "Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense *or procures, counsels, aids, or abets in its commission* may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." MCL 767.39 (emphasis added).

[T]o convict a defendant of aiding and abetting a crime, a prosecutor must establish that "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." [*People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004), quoting *People v Carines*, 460 Mich 750, 768; 597 NW2d 130 (1999).]

Viewed in the light most favorable to the prosecution, the evidence supports that Merchant conceived the idea to commit the home invasion, informed Chandler where items of value could be located, and then sat back and waited for Chandler and his compatriots to pull off the heist. Thereafter, Merchant accepted his share of the spoils. Merchant alone knew the value and location of the coins and that the victims would be on vacation, leaving the house unguarded. Merchant's denial of these facts does not merit reversal. Such credibility assessments must be left to the jury. *People v Gonzalez*, 468 Mich 636, 640-641; 664 NW2d 159 (2003). Accordingly, we affirm Merchant's home invasion conviction.

### III. SENTENCING VARIABLES

Both defendants challenge various offense variables (OVs) affecting the length of the minimum sentencing guidelines ranges applicable to their convictions. We review for clear error a sentencing court's factual determinations underlying an OV score. Those factual findings

-3-

"must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review de novo the trial court's application and interpretation of the relevant statutes. *Id.*

A. OV 4

Defendants challenge the trial court's decision to score 10 points against each in relation to OV 4. The scoring of OV 4 is governed by MCL 777.34, which provides:

(1) Offense variable 4 is psychological injury to a victim. Score offense variable 4 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) Serious psychological injury requiring professional treatment occurred to a victim......... 10 points

(b) No serious psychological injury requiring professional treatment occurred to a victim......... 0 points

(2) Score 10 points if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive.

In scoring this variable, the court looked at the victim impact statements. However, defendants contend that the injury discussed in those statements does not rise to the level of "serious" as required by the statute.

"Serious" is not defined in the OV 4 statute. *Random House Webster's College Dictionary* (1997) defines "serious," in relevant part, as "earnest; sincere; not trifling," and "giving cause for apprehension; critical or threatening." Defendants complain that this Court has veered far astray of the statutory language and the definition of the term "serious" by allowing mere fearfulness to substitute for "serious psychological injury." In this regard, defendant Chandler relies on the nonbinding majority opinion in *People v Rivera*, unpublished opinion per curiam of the Court of Appeals, issued July 31, 2012 (Docket No. 302608). In *Rivera*, the victim of a home invasion "testified that she was shocked and frightened to find defendant and his cohort in her home." *Id.*, unpub op at 9. Beyond that testimony, there was no record indication of any psychological injury to the victim. The panel noted, "If a victim's fear alone were always enough to score OV 4 at ten points, every crime against a person would have to be scored at ten points as it is hard to imagine a victim not being frightened during a crime against them." *Id.* at 10. Defendants conflate this analysis with an opinion that Michigan courts have improperly allowed normal fear to replace "serious psychological injury" in the statute. This is an inaccurate reflection of the law.

In *People v Apgar*, 264 Mich App 321, 329; 690 NW2d 312 (2004), this Court briefly stated in approval of a score of 10 points for OV 4: "Because the victim testified that she was fearful during the encounter with defendant, we find that the evidence presented was sufficient to support the trial court's decision to score OV 4 at ten points." The facts of that case, however, were much more severe than suggested by this simple line and certainly supported a finding of

"serious psychological injury." In that case, a group of three men drove the 13-year-old victim to a house against her will, forced her to smoke marijuana to subdue her, and then raped her. Thereafter, the young victim had to undergo an invasive sexual assault examination. *Id.* at 324. The very nature of the offense in that case supported an inference that the victim suffered a "serious psychological injury."

Although the nature of the offense in this case is not as severe, the evidence still supports the trial court's score. Pyle's victim impact statement described, "It's hard for me to feel safe and comfortable in my own home knowing there were strange young kids that broke in." She continued, "Now I'm worried and uneasy about being home by myself. I find myself paying close attention to little noises throughout the house, and I always feel like someone is watching me and our house." Pyle was upset that someone close to her boyfriend would perpetrate such a crime and she no longer felt open and comfortable around "'friends'/co-workers." Pyle further lamented the loss of Sochacki's beloved coin collection that he had wanted to pass on to his children.

Sochacki similarly stated:

This whole situation has caused great uncertainty. My home to me is me [and] Lena's personal escape from everyday life. Now this is not the case due to John Merchant. His actions caused me to lose sleep, listen to every noise I hear so I can protect my 8 month pregnant girlfriend. What a low life to steal this from her. She is very scared and uncomfortable from these actions.

This Court has found sleeplessness due to fear sufficient to merit a score under OV 4. See *People v Earl*, 297 Mich App 104, 109-110; 822 NW2d 271 (2012). Sochacki's sleeplessness as well as both victims' continued anxiety and fear supported the court's scoring decision in this case.

## B. OV 10

The trial court scored 15 points for each defendant in relation to OV 10, exploitation of a vulnerable victim. MCL 777.40 governs the scoring of this variable, in relevant part, as follows:

(1) Offense variable 10 is exploitation of a vulnerable victim. Score offense variable 10 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

   (a) Predatory conduct was involved ......... 15 points

* * *

 (3) As used in this section:

   (a) "Predatory conduct" means preoffense conduct directed at a victim . . . for the primary purpose of victimization.

   (b) "Exploit" means to manipulate a victim for selfish or unethical purposes.

-5-

(c) "Vulnerability" means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation. . . .

Defendants contend that the victims do not qualify as "vulnerable" under the statute and that no predatory conduct occurred.

In *People v Huston*, 489 Mich 451; 802 NW2d 261 (2011), our Supreme Court fleshed out the Legislature's decision to require the scoring of 15 points where a defendant has engaged in predatory conduct. First, the Court held that the defendant's preoffense conduct need not be directed toward a particular victim. A defendant who lies in wait for an available victim engages in predatory conduct on par with a defendant who stalks a selected victim awaiting the perfect time to commit the planned offense. *Id.* at 459. A defendant "who seeks opportunistically to rob the first vulnerable person within the community at large who happens along" instills "fear and apprehension" just as the stalking defendant does. *Id.* at 460. Second, the Court noted that the Legislature chose to impose the highest number of points under OV 10 for predatory conduct because it involved factors that are "*always* outside the victim's control." *Id.* at 461 (emphasis in original). And these external factors in the hands of the defendant render the chosen victim vulnerable: "By its essential nature, predatory conduct may render *all* persons uniquely susceptible to criminal exploitation and transform all persons into potentially 'vulnerable' victims." *Id.* (emphasis in original).

*Huston* cautioned that "predatory conduct" is not synonymous with "*any* manner of 'preoffense conduct.' " *Id.* (emphasis in original). Nearly every offense involves some sort of preoffense conduct, as "[f]ew criminal offenses arise utterly spontaneously and without forethought." *Id.* Accordingly, *Huston* clarified that predatory conduct encompasses "only those forms of 'preoffense conduct' that are commonly understood as being 'predatory' in nature, e.g. lying in wait and stalking, as opposed to purely opportunistic criminal conduct or . . . nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." *Id.* at 462 (quotation marks and citation omitted).

In the instant case, the record indicates that defendant Merchant cultivated and exploited his relationship with Sochacki in order to steal his property. Merchant had a personal relationship with Sochacki and had been a guest in the victims' home. This relationship gave Merchant the opportunity to learn where Sochacki stored his coin collection. Once Merchant knew Sochacki was a worthy mark, Merchant needed to determine the right time to commit the theft without being interrupted. Merchant's amity with Sochacki allowed him to ferret out that information as well. Sochacki innocently told Merchant of his vacation and Merchant asked Sochacki repeated questions to ensure the accuracy of the dates of the victims' absence. Merchant's conduct suggested that for a good portion of their "friendship," he was planning to commit the offense while Sochacki was out of town. The external circumstance of Merchant's friendship with the victim gave rise to a vulnerability that made the victim more susceptible to the harm, or home invasion. Thus, the sentencing court's score of 15 points for OV 10 was appropriate under *Huston* with respect to Merchant.

Reasonable inferences arising from the evidence support the court's decision to score 15 points against defendant Chandler as well. It is undisputed that Chandler had no direct relationship with Sochacki or Pyle. However, Chandler did participate in preoffense planning. It

was Chandler who sought out Brown and Miles to break and enter into the victims' home. It was reasonable for the court to infer that Chandler was involved in other aspects of the planning, such as conferring with Merchant and encouraging his predatory conduct toward Sochacki. While planning alone could not support his score, we see no reason why encouraging another to engage in predatory conduct could not form the score's basis.

## C. OV 14

The sentencing court found that both defendants were leaders in the offense and scored 10 points for each of them on OV 14. MCL 777.44(1)(a) provides for such a score when "[t]he offender was a leader in a multiple offender situation." MCL 777.44(2) continues:

All of the following apply to scoring offense variable 14:

(a) The entire criminal transaction should be considered when scoring this variable.

(b) If 3 or more offenders were involved, more than 1 offender may be determined to have been a leader.

Both defendants' scores were more than adequately supported by the record evidence. Merchant was clearly the mastermind behind this offense. Through his friendship with Sochacki, Merchant learned Sochacki's home contained valuables and that the victims would be going on vacation, leaving the home unguarded. Merchant shared the information with Chandler, who then arranged for Brown and Miles to commit the offense. Merchant planned the heist, Chandler acted as the human resources director, and Brown and Miles as the employees. And this hierarchy was supported by Brown's testimony at trial.

## D. OV 19

Finally, Merchant challenges the trial court's decision to score 10 points in relation to OV 19. MCL 777.49 governs this variable:

Offense variable 19 is threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services. Score offense variable 19 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

* * *

(c) The offender otherwise interfered with or attempted to interfere with the administration of justice......... 10 points . . . .

Merchant argues that the court improperly scored 10 points for OV 19, because it was based on his attempts to minimize his culpability, which he maintains is not addressed by the statute. Merchant lied to law enforcement officers about how he had obtained the coins found in his safe during the search of his residence. In his first police interview, Merchant denied his

involvement in the crime and actually directed the officer to investigate another coworker at Meijer, an innocent third party. Specifically, Merchant suggested that a coworker named "Mel" could have overheard his conversations with Sochacki and decided to break into Sochacki's home. Merchant then changed his story, and admitted to planning the offense, but claimed he tried to call it off, a fact that Brown emphatically denied. Merchant again changed his story and denied at trial that he admitted his guilt during his second police interview. Assuming the officer's account of the police interviews was accurate, defendant perjured himself at trial. This Court has held that perjury is an adequate basis for scoring OV 19. *People v Underwood*, 278 Mich App 334, 338; 750 NW2d 612 (2008). Based on the foregoing evidence, we find that the sentencing court properly exercised its discretion in scoring 10 points for OV 19 for Merchant.

We affirm.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause