# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

UNPUBLISHED
October 13, 2015

v

ISSAC COTTO,

     Defendant-Appellant.

No. 317931
Alger Circuit Court
LC No. 2012-001996-FC

Before: BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.

Defendant pleaded nolo contendere to first-degree home invasion, MCL 750.11a(2), and armed robbery, MCL 750.529. He was sentenced to 6 to 20 years' imprisonment for first-degree home invasion and 10 years, 6 months to 30 years' imprisonment for armed robbery. The case is before us now on remand from the Supreme Court for consideration as on leave granted to decide "whether the trial court erroneously assessed . . . defendant 15 points on Offense Variable 10." *People v Cotto*, 497 Mich 970; 859 NW2d 707 (2015). Because the trial court clearly erred in the scoring of offense variable OV (10) and this scoring error affects the advisory recommended minimum sentencing range under the legislative guidelines, we affirm defendant's convictions, but vacate his sentence and remand for resentencing.

This case arises out of the breaking and entering of a home in Munising, Michigan. Defendant and three[1] other men drove to Munising from out-of-state with a car and a U-Haul van. One or two of the men involved in the break-in believed they had been cheated in a past drug deal with the victim, and their plan was to break into the home, restrain anyone present, and steal any items of value, apparently to recoup the funds that they believed they were owed. Defendant's role in the plan was to drive to the house and to then act as a look-out.

To effectuate their plan, there was some preparation that went on before the men carried out the break-in. For example, the men purchased some supplies, such as walkie-talkies, hand warmers, and a compass. They arranged for the U-Haul and a second vehicle to make the trip,

---

[1] A fifth man also accompanied defendant and the others to Michigan, but he does not appear to have been involved with the break-in at issue.

and they also brought numerous supplies with them to Michigan, such as guns, weapons, ski masks, camouflage clothing, duct tape, etc. In addition, they printed directions to the house and, when they arrived in Munising, they drove by to "check out" the victim's house.

On the day of the break-in, defendant dropped the other three men at the house and parked a short distance away in order to act as a look-out. In his role as getaway driver, it is uncontested that defendant remained with the car and did not enter the home. The three men that entered the victim's house were armed with guns, knives, a baseball bat, zip ties, duct tape, and other items. They wore camouflage, ski masks, and gloves. When they initially approached the house, the victim was not alone and the men waited in a wooded area for the victim's roommates to leave before entering. The victim testified that three men armed with guns entered his home and struck him multiple times with a baseball bat. According to the victim, the men eventually zip-tied his hands and secured him to a chair with duct tape. The victim testified that the men took cash and other items. Eventually, a utility worker looking for the meter on the house heard yelling and he saw that the victim's hands were bound. Police were called and the perpetrators, including defendant, were arrested.

Defendant later entered a plea of nolo contendere to first-degree home invasion and armed robbery. Defendant filed a delayed application for leave to appeal, raising challenges to the scoring of several offense variables, including OV 10. This Court denied defendant's application. *People v Cotto*, unpublished order of the Court of Appeals, entered December 3, 2013 (Docket No. 317931). Defendant then filed an application for leave to appeal to the Michigan Supreme Court. As noted, the Supreme Court remanded this matter to this Court, limited to "consideration . . . of whether the trial court erroneously assessed . . . defendant 15 points on Offense Variable 10, MCL 777.40, for predatory conduct." *Cotto*, 497 Mich at 970. Consequently, the issue before us at this time is whether the trial court clearly erred in the scoring of OV 10.

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by the statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (footnotes omitted).]

"Offense variable 10 is exploitation of a vulnerable victim." MCL 777.40(1). As the plain language of the statute makes clear, "the central subject is the assessment of points for the exploitation of vulnerable victims." *People v Cannon*, 481 Mich 152, 157; 749 NW2d 257 (2008). Consequently, "points should be assessed under OV 10 only when it is readily apparent that a victim was 'vulnerable,' i.e., was susceptible to injury, physical restraint, persuasion, or temptation," and that the vulnerable victim was exploited. *Id*. at 158-159.

Among the exploitive conduct toward a vulnerable victim that may be scored under OV 10 is "predatory conduct." See MCL 777.40(1)(a). Specifically, OV 10 is to be scored at 15 points if "[p]redatory conduct was involved." MCL 777.40(1)(a). As defined by statute, " '[p]redatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). "To victimize is to make a victim of someone, and a

victim is a person who suffers from a destructive or injurious action." *People v Ackah-Essien*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 317411), slip op at 12. Thus, for purposes of OV 10, "predatory conduct" refers to "behavior that precedes the offense, directed at a person for the primary purpose of causing that person to suffer from an injurious action or to be deceived." *Cannon*, 481 Mich at 161.

"The timing and location of an offense—waiting until a victim is alone and isolated—is evidence of predatory conduct." *Ackah-Essien*, slip op at 12. However, conduct is not predatory simply because it predates the offense. See *People v Hutson*, 489 Mich 451, 462; 802 NW2d 261 (2011). Rather, predatory conduct includes "*only* those forms of 'preoffense conduct' that are commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking." *Id.* at 462 & n 7 (emphasis added). For example, predatory conduct does not include "purely opportunistic criminal conduct or 'preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.'" *Id.*, quoting *Cannon*, 481 Mich at 162. Further, because OV 10 gives no indication that it should be scored in a multiple offender situation based on a codefendant's conduct, it follows that only a defendant's own exploitation of a vulnerable victim should be scored. Cf. *People v Hunt*, 290 Mich App 317, 326; 810 NW2d 588 (2010).

Turning to the facts of this case, the record lacks sufficient evidence to support the trial court's scoring of OV 10 at 15 points. The record shows that defendant participated in a plan to drive to Munising, break into the victim's home, "and then take items such as marihuana, cash, or valuable property." Before the offense was committed, defendant may have been involved with some initial planning before coming to Michigan, and then he either drove or rode as a passenger when four of the five codefendants drove to the victim's home to "check the house out." He later drove the codefendants to the victim's home and waited outside to serve as the potential getaway driver during the execution of their plan. However, considering the extent of defendant's involvement, there is nothing to indicate that defendant did anything "more than run-of-the-mill planning to effect a crime or subsequent escape without detection." *Hutson*, 489 Mich at 462 & 7 (citation and internal quotation marks omitted). His conduct simply did not involve the type of lying in wait or stalking that is indicative of predatory conduct. See, e.g., *Ackah-Essien*, slip op at 12. Further, to the extent the other men may have engaged in predatory conduct by, for example, lying in wait outside the house until the victim was alone, defendant, who was waiting with the car, was not actively involved with this conduct and thus it cannot be scored in relation to defendant for purposes of OV 10. Cf. *Hunt*, 290 Mich App at 326. Considering only defendant's active participation, there was insufficient evidence to support the trial court's scoring of OV 10 at 15 points.

When OV 10 is properly scored at 0 points, defendant's total OV score is reduced from 80 to 65. This change in the total OV score also alters the advisory minimum sentencing ranges under the Legislative guidelines from 57 to 95 months to 51 to 85 months for defendant's home invasion conviction and from 126 to 210 months to 108 to 180 months for defendant's armed robbery conviction. See MCL 777.62; MCL 777.63. Because the scoring error altered the advisory minimum sentencing ranges, resentencing is required. See *People v Francisco*, 474

Mich 82, 89 n 8; 711 NW2d 44 (2006). Accordingly, we vacate defendant's sentence and remand for further proceedings consistent with this opinion.[2]

Affirmed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Joel P. Hoekstra

---

[2] At resentencing, the trial court should sentence defendant in keeping with the sentencing procedures set forth in the Supreme Court's recent decision in *People v Lockridge*, __ Mich __; __ NW2d __ (2015).