*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RICARDO WARREN EDMONDS,

Defendant-Appellant.

UNPUBLISHED
December 29, 2022

No. 359299
Oakland Circuit Court
LC No. 2012-242058-FH

Before: M. J. KELLY, P.J., and MURRAY and RIORDAN, JJ.

PER CURIAM.

Following a jury trial in 2013, defendant was convicted of first-degree home invasion, MCL 750.110a(2), and aggravated stalking, MCL 750.411i. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 21½ to 40 years imprisonment for each conviction. In a prior appeal, this Court affirmed defendant's convictions and sentences. *People v Edmonds*, unpublished per curiam opinion of the Court of Appeals, issued December 16, 2014 (Docket No. 318262). In 2016, defendant filed a motion for relief from judgment, which the trial court denied. This Court denied defendant's delayed application for leave to appeal that decision. *People v Edmonds*, unpublished order of the Court of Appeals, entered May 12, 2017 (Docket No. 336347), lv den 501 Mich 1059 (2018). Thereafter, defendant filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. The federal court conditionally granted defendant's petition and ordered that the case be remanded to the trial court for resentencing.[1] On remand, the trial court resentenced defendant as a fourth-offense habitual offender to reduced prison terms of 17 to 40 years for each conviction, to be served concurrently. Defendant appeals his sentences as of right. We affirm.

I. FACTUAL OVERVIEW

---

[1] *Edmonds v Rewerts*, opinion of the United States District Court for the Eastern District of Michigan, entered February 27, 2020 (ED Mich, Case No. 2:18-CV-11691).

This Court summarized the underlying facts in defendant's prior appeal as follows:

> Defendant and the victim dated for a year and a half before breaking up in May 2012. The day after their break up, the victim received numerous harassing phone calls from defendant requesting that she bring his belongings back. She brought defendant's things to his home and allowed defendant to use her cell phone. The two of them proceeded to argue, and defendant refused to give the cell phone back. The victim then went to her mother's home, which was a short distance away. But defendant followed her, and when he arrived at the house, he destroyed the windows of a van parked outside and, a short time later, threw bricks through the home's front picture window. The victim went into hiding and eventually obtained a personal protection order on June 1, 2012.

> Arthur Newby testified that his mother was the victim's neighbor and the victim would keep an eye on his mother; thus, the victim had his contact information. Newby further testified that on June 23, 2012, he received a call from an unknown male who was asking about the victim. The male asked Newby about the victim, and when Newby responded that he did not have any information about her, the male stated, 'I guess I'll have to crack her skull when she gets home.' Being concerned, Newby called the police, and the police performed a welfare check at the victim's home. After obtaining entry into the victim's home, they found that the house had been severely vandalized, including writing on the wall that was identified as being defendant's. The victim later arrived at the house and, after police left, defendant was found hiding in the bedroom. Police returned and apprehended defendant from the home. [*Edmunds*, unpub op at 1 (Docket No. 318262).]

After the federal court remanded this case for resentencing, the trial court, after entertaining objections to the scoring of defendant's sentencing guidelines, determined that defendant's applicable guidelines range was 78 to 260 months. Defendant requested a sentence at "the bottom" of the guidelines range, whereas the prosecutor requested an upward departure from the guidelines range. The trial court sentenced defendant to concurrent prison terms of 17 to 40 years (i.e., 204 to 480 months) for each conviction, which was within the guidelines range of 78 to 260 months.

## II. SCORING OF THE SENTENCING GUIDELINES

Defendant argues that the trial court erred in scoring the sentencing guidelines. In particular, he challenges the court's 15-point score for offense variable (OV) 10 (exploitation of a vulnerable victim involving predatory conduct). Defendant also argues in a separate pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4 ("Standard 4 brief"), that the trial court erred by assigning a 10-point score to OV 4. We reject both arguments.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of

the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* (citation omitted).

## A. OV 10

OV 10 addresses the exploitation of a vulnerable victim, and the trial court must score 15 points if "[p]redatory conduct was involved." MCL 777.40(1)(a). For purposes of OV 10, it is not necessary for a victim to have inherent vulnerabilities; "[i]nstead, a defendant's 'predatory conduct,' by that conduct alone . . . can create or enhance a victim's 'vulnerability.' " *People v Huston*, 489 Mich 451, 454; 802 NW2d 261 (2011) " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). Predatory conduct encompasses "only those forms of 'preoffense conduct' that are commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or 'preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.' " *Huston*, 489 Mich at 462. (citation omitted). In order to find that a defendant engaged in predatory conduct, a trial court must conclude that (1) the defendant engaged in preoffense conduct, (2) the defendant directed that conduct toward "one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation[,]" and (3) the defendant's primary purpose in engaging in the preoffense conduct was victimization. *People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008).

A preponderance of the record evidence supports that defendant engaged in preoffense conduct directed at a particular victim, his former girlfriend, with the intent to victimize her by breaking into her home and assaulting her. As detailed in the lower court record, the evidence showed (1) that defendant engaged in preoffense conduct, including stalking the victim, harassing her, threatening her, following her to her mother's house, and throwing bricks through her mother's window, and, at one point, causing her to go into hiding for 30 days because of his relentless conduct, (2) that defendant's preoffense conduct was directed specifically toward the victim, whom defendant had been in a domestic relationship with, see *Cannon*, 481 Mich 158-159, and whom defendant's predatory conduct created or enhanced her vulnerability, *Huston*, 489 Mich at 454, and (3) that defendant's primary purpose in engaging in his preoffense conduct was victimization, i.e., to enable him to create a situation where he would ultimately physically harm the victim in her home. As the trial court observed, on the day of the home invasion, defendant expressed his intent to "crack [the victim's] skull when she gets home." Consequently, the evidence supports the trial court's 15-point score for OV 10.

## B. OV 4

OV 4 addresses psychological injury to a victim. MCL 777.34(1). The trial court is required to score 10 points for OV 4 if a "serious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The statute does not require that the victim actually receive professional treatment in order to assess 10 points. MCL 777.34(2). However, a victim's expression of fearfulness during the commission of a crime "*by itself and without any other showing of psychological harm*" is not sufficient to justify assessing 10 points for OV 4. *People v White*, 501 Mich 160, 164; 905 NW2d 228 (2017). Additionally, "a court cannot merely assume that a victim has suffered a 'serious psychological injury' solely because of the

characteristics of the crime." *Id*. at 165. However, "[t]he trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014) (citation omitted).

The evidence showed that, after their breakup, defendant engaged in a course of conduct that included harassing the victim, threatening her, vandalizing her home, breaking into her house, throwing bricks through her mother's window, and breaking multiple windows. On the day of the home invasion, defendant called the victim's neighbor's son, asking about the victim, and stated, "I guess I'll have to crack her skull when she gets home." The police were contacted and performed a welfare check, and they discovered that the victim's house had been vandalized, with writing, food, and feces on some walls. The victim later arrived home at the request of the police, and after the police left, defendant was found hiding in her bedroom under a pile of clothes. The victim believed that defendant was going to kill her so she ran and screamed for assistance. In a victim-impact statement prepared for defendant's sentencing, the victim stated that she had "been seeking counseling through Haven since this happened." At defendant's resentencing, which occurred approximately nine years after the incident, the victim informed the trial court that she was "still" seeking counseling. She also noted her emotional reaction "[w]henever [she] hear[s] the breaking of glass," stated that she was angry, and said that she "strongly feel[s] in [her] gut if he gets anything less [than life imprisonment] he would seek and kill [her]." The victim's statements, coupled with the facts of the case, provided a reasonable basis for the trial court to conclude that the victim actually suffered a serious psychological injury requiring professional treatment as a result of defendant's crime. The trial court did not clearly err by finding that a preponderance of the evidence supported a 10-point score for OV 4.[2]

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues in his Standard 4 brief that defense counsel was ineffective by failing to request an appropriate jury instruction related to the first-degree home invasion charge. We decline to consider this issue because it is not properly before this Court.

The federal court remanded this case to the trial court solely for the purpose of resentencing. "An appeal from a resentencing is limited to the resentencing proceeding." *People v Gauntlett*, 152 Mich App 397, 400; 394 NW2d 437 (1986) (citation omitted); see also *People v Jones*, 394 Mich 434, 435-436; 231 NW2d 649 (1975) (where a case is remanded following a prior

---

[2] "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR . . . ." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). It may also properly rely on inferences that arise from the record evidence when making the findings underlying its scoring of offense variables. *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), overruled in part on other grounds by *White*, 501 Mich at 164 n 2. Further, contrary to what defendant argues, the scoring of offense variables does not have to be based solely on the facts the defendant admits or the jury verdict. This Court has held that "judicial fact-finding is proper, as long as the guidelines are advisory only." *People v Biddles*, 316 Mich App 148, 159; 896 NW2d 461 (2016). At the time of defendant's sentencing, the guidelines were merely advisory, and nothing suggests that the trial court treated them otherwise.

appeal, "the scope of [a] second appeal is limited by the scope of the remand"). Here, the federal court remanded the case to state court only for the purpose of resentencing. *Edmonds v Rewerts*, opinion of the United States District Court for the Eastern District of Michigan, entered February 27, 2020 (ED Mich, Case No. 2:18-CV-11691), aff'd *Morrell v Wardens*, 12 F4th 626, 628 (CA 6, 2021). Defendant's ineffective-assistance claim attacks the validity of his original convictions, which is beyond the scope of this appeal. This Court lacks jurisdiction to consider defendant's ineffective-assistance argument.

Affirmed.


/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Michael J. Riordan