# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MYRON GREGORY JESSIE,

        Defendant-Appellant.

UNPUBLISHED
April 24, 2018

No. 335736
Wayne Circuit Court
LC No. 16-005646-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVON LAMONT MILLER,

        Defendant-Appellant.

No. 335738
Wayne Circuit Court
LC No. 16-005653-02-FC

---

Before: BOONSTRA, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this consolidated appeal,[1] defendants Myron Jessie (Docket No. 335736) and Davon Miller (Docket No. 335738) appeal by right their convictions and sentences entered after a joint trial before a single jury. The jury convicted Jessie of two counts of armed robbery, MCL 750.529, and one count of first-degree home invasion, MCL 750.110a(2),[2] and convicted Miller of two counts of armed robbery, and single counts of first-degree home invasion, carrying a weapon with unlawful intent, MCL 750.226, and possession of a firearm during the commission of

---

[1] See *People v Jessie*, unpublished order of the Court of Appeals, issued December 6, 2017 (Docket Nos. 335736 & 335738).

[2] The trial court granted Jessie's motion for a directed verdict on additional charges of carrying a weapon with unlawful intent, MCL 750.226, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b.

-1-

a felony (felony-firearm), MCL 750.227b. The trial court sentenced Jessie as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of 24 to 50 years for each robbery conviction, and 9 to 30 years for the home invasion conviction. The court sentenced Miller to concurrent prison terms of 18 to 40 years for each robbery conviction, 7 to 20 years for the home invasion conviction, and one to five years for the carrying a weapon with unlawful intent conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. We affirm in both appeals.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Jessie and Miller were charged with offenses related to the home invasion and armed robbery of Jessie's neighbors, Daniel and Terry McNamara, on May 23, 2017, in Detroit. The prosecution's theory was that Jessie was the linchpin of this criminal episode because he used his personal relationship with the McNamaras to induce them into opening their door for Miller and a third participant, Delond Matlock,[3] knowing that Miller and Matlock intended to commit a robbery. The victims testified that Jessie knocked on their front door and engaged Daniel in a conversation about Daniel mowing someone's lawn. Jessie then left and entered a white car with two other men. Moments later, Miller knocked on Daniel's front door, had a similar exchange with Daniel, and asked if he could return and use the side door. Miller then walked away toward the white car, although Daniel did not see whether he entered the car. Shortly thereafter, Miller and Matlock knocked on the side door of the house and again engaged Daniel in another similar lawn-related conversation. Matlock then pointed a pistol at Daniel and Miller demanded Daniel's rings. Matlock ordered Daniel into the basement, where Matlock held both Daniel and Terry at gunpoint and demanded their gold and wedding rings. Miller remained upstairs and searched the premises. Matlock stated that he would have to kill the McNamaras because they had seen his face, but when he attempted to fire the gun, it jammed. Daniel managed to retrieve his own gun, which he fired at Matlock as Matlock fled. Miller fled from the house as well, but left a sweatshirt behind. Both Daniel and Terry identified Jessie as the person who had originally approached the house, and from photographic lineups they identified Matlock and Miller as the robbers.

At trial, Jessie and Miller both denied involvement in the offense. The sweatshirt left at the scene contained Miller's DNA as well as that of two other unknown individuals (not Jessie or Matlock). DNA analysis of bloodstains found at the scene revealed Matlock's DNA, with Miller and Jessie excluded as possible contributors.

## II. DOCKET NO. 335736 (DEFENDANT JESSIE)

### A. SUFFICIENCY OF THE EVIDENCE

Jessie first argues that the prosecution failed to present sufficient evidence that he knew of the codefendants' criminal intent or that he did anything to assist in the crimes being committed

---

[3] Matlock pleaded guilty to two counts of armed robbery, one count of first-degree home invasion, and one count of felony-firearm. He is not a party to this appeal. We will sometimes refer to Miller and Matlock together as Jessie's codefendants.

such as would support his conviction for first-degree home invasion and his two convictions for armed robbery on an aiding and abetting theory. We disagree. We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, we must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. See *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Jessie's sufficiency argument does not focus on any specific element of the offenses for which he was convicted, but asserts that it is speculative to conclude that he participated in committing the offenses. At trial, the prosecution advanced the theory that Jessie was guilty of first-degree home invasion and armed robbery as an aider or abettor.

The elements of first-degree home invasion are: (1) the defendant broke and entered a dwelling or entered the dwelling without permission; (2) when the defendant did so, he intended to commit a felony, larceny, or assault, or he actually committed a felony, larceny, or assault while entering, being present in, or exiting the dwelling; and (3) another person was lawfully present in the dwelling or the defendant was armed with a dangerous weapon. *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010); MCL 750.110a(2). The elements of armed robbery are (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a dangerous weapon or with an article used or fashioned in such a way as to lead a reasonable person to believe that it is a dangerous weapon. *People v Ford*, 262 Mich App 443, 458; 687 NW2d 119 (2004); MCL 750.529.

A person who aids or abets the commission of a crime may be convicted and punished as if he or she directly committed the offense. MCL 767.39. "To support a finding that a defendant aided and abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant [either] intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement[,]" *People v Izarraras-Placante*, 246 Mich App 490, 496-497; 633 NW2d 18 (2001) (citation omitted), "or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense," *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006). "Aiding and abetting" describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999); *People v Rockwell*, 188 Mich App 405, 411-412; 470 NW2d 673 (1991). "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v Lawton*, 196 Mich App 341, 352; 492 NW2d 810 (1992). An aider or abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. *Carines*, 460 Mich at 757; *People v Bennett*, 290 Mich App 465, 474; 802 NW2d 627 (2010).

Viewed in a light most favorable to the prosecution, the evidence was sufficient to show that Miller and Matlock committed the crimes of first-degree home invasion and armed robbery by forcing their way into the McNamaras' home while Matlock was armed with a pistol and taking their rings and other belongings. And there was sufficient circumstantial evidence that Jessie assisted his codefendants in the commission of the crimes by using his personal relationship with the McNamaras to lay the groundwork for his codefendants to subsequently force their way into the house to rob the McNamaras. Specifically, the evidence showed that Jessie approached the McNamaras' front door and engaged Daniel in a bogus conversation about lawn services,[4] thereby causing Daniel to let down his guard when, moments later, Miller, whom Daniel did not know but reasonably associated with Jessie, came to the front door, engaged Daniel in the same conversation, and acquired permission from Daniel to return and use the side door, ultimately allowing Miller and Matlock the opportunity to force their way into the McNamaras' home and rob them.

Finally, the evidence also was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Jessie knew that his codefendants intended to commit armed robbery and home invasion at the time he gave aid and encouragement, or to at a minimum conclude that he was aware that Miller and Matlock intended to commit armed robbery and that the commission of a home invasion was a natural and probable consequence of the intended armed robberies. Jessie's conduct before the home invasion, the conspicuous similarities in the conversations with Daniel by both Jessie and Miller, the close temporal proximity in their appearances at the McNamaras' door, and the fact that Jessie entered the same white car that Miller approached supports the inference that Jessie and his codefendants acted in concert to commit the crimes. Accordingly, the evidence was sufficient to support Jessie's convictions of first-degree home invasion and two counts of armed robbery under an aiding and abetting theory. *Izarraras-Placante*, 246 Mich App at 496-497; see also *Reese*, 491 Mich at 139.

## B. OFFENSE VARIABLE SCORING

Jessie also argues that he is entitled to be resentenced because the trial court erroneously assessed points for offense variables (OV) 8, 10, and 13. Although we agree that OV 8 was improperly assessed 15 points, we disagree regarding the other two variables and conclude that resentencing is not required. When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

### 1. OV 8

---

[4] Daniel testified that he did not mow lawns for money, that his lawn mower was broken, and that he found the conversation "strange."

MCL 777.38(1)(a) directs the trial court to assess 15 points if "[a] victim was asported to another place of greater danger or to a situation of greater danger[.]" The "asportation" element of OV 8 is satisfied "[i]f a victim was carried away or removed to another place of greater danger or to a situation of greater danger[.]" *People v Barrera*, 500 Mich 14; 892 NW2d 789 (2017).

Jessie argues that OV 8 should not have been assessed points because he was not a participant in the asportation of either victim. We agree. No evidence was presented that Jessie was present during the victims' asportation, moved either victim into the basement, or directed that either victim be moved there. "[A] defendant shall not have points assessed solely on the basis of his or her co-offenders' conduct unless the OV at issue specifically indicates to the contrary." *People v Gloster*, 499 Mich 199, 206; 880 NW2d 776 (2016). In contrast to some other offense variables, OV 8 does not specifically direct the trial court to assess a defendant points based on the conduct of a codefendant. MCL 777.38. In light of the foregoing, the trial court clearly erred in finding that Jessie's conduct warranted the assessment of 15 points for OV 8.

Although the trial court erred in assessing 15 points for OV 8, the error does not entitle Jessie to resentencing. The trial court scored the guidelines for Jessie's convictions of armed robbery, which is a class A offense. MCL 777.16y. Jessie received a total OV score of 96 points, which combined with his 52 prior record variable points, placed him in the E-V cell of the applicable sentencing grid, for which the minimum sentence range is 171 to 356 months for a second-offense habitual offender. MCL 777.62; MCL 777.21(3)(a). Reducing Jessie's OV score by 15 points would make his OV score 81 points and would not alter his placement in OV Level V (80-99 points), and thus would have no effect on his guidelines range. Because the alleged scoring error did not affect the appropriate guidelines range, Jessie is not entitled to resentencing on this basis. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006); *People v Biddles*, 316 Mich App 148, 156; 896 NW2d 461 (2016).

## 2. OV 10

OV 10 addresses exploitation of a vulnerable victim, and the trial court must assess 15 points if "[p]redatory conduct was involved." MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). Predatory conduct encompasses "only those forms of 'preoffense conduct' that are commonly understood as being 'predatory' in nature . . . as opposed to purely opportunistic criminal conduct or 'preoffense conduct' involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011) (citation omitted). In order to find that a defendant engaged in predatory conduct, a trial court must conclude that (1) the defendant engaged in preoffense conduct, (2) the defendant directed that conduct toward "one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation[,]" and (3) the defendant's primary purpose in engaging in the preoffense conduct was victimization. *People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008).

The trial court did not err in concluding that Jessie engaged in preoffense conduct directed at Daniel, with the intent to victimize both Daniel and Terry by having their home invaded and robbing them. There was evidence that the McNamaras had known Jessie, their neighbor, for approximately three years, and had paid him to perform odd jobs around their house to help him

out. They trusted Jessie because he was their neighbor and considered him a friend. Using this trusted relationship, Jessie went to the McNamaras' front door and engaged Daniel in a strange conversation about lawn services, causing Daniel to let down his guard and ultimately allowing Miller and Matlock to take advantage of Daniel, invade the McNamaras' home, and rob both Daniel and Terry. Thus, the McNamaras were not random victims who were merely the subject of "opportunistic criminal conduct." 489 Mich at 462. Rather, the evidence showed that (1) Jessie engaged in preoffense conduct as demonstrated by his using his trusted relationship with the McNamaras to entice Daniel into trusting Jessie's associate, (2) Jessie's conduct was directed specifically toward Daniel, who was particularly vulnerable and susceptible to persuasion considering his relationship with Jessie, and (3) Jessie's primary purpose in engaging in the preoffense conduct was to lay the groundwork for his associates to invade the McNamaras' home and rob them. In light of the foregoing, the trial court did not clearly err in finding that Jessie's conduct warranted a 15-point score for OV 10. *Hardy*, 494 Mich at 438.

### 3. OV 13

OV 13 addresses a "continuing pattern of criminal behavior." The trial court must assess 25 points for OV 13 if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). Jessie argues that he has no qualifying offenses because his only prior felony was in 2007, and there were no other offenses that did not result in a conviction. However, all crimes within a five-year period, including the sentencing offense, must be counted, MCL 777.43(2)(a), and a pattern of criminal activity may be based on multiple offenses arising from the same event or from a single criminal episode. See *People v Harmon*, 248 Mich App 522, 532; 640 NW2d 314 (2001), and *People v Gibbs*, 299 Mich App 473, 487; 830 NW2d 821 (2013). Jessie was convicted of two separate counts of armed robbery— one for each victim, which are crimes against a person, MCL 777.16y, and he was also convicted of first-degree home invasion, which likewise is designated as a crime against a person, MCL 777.16f. Because Jessie was convicted of three qualifying offenses resulting from separate criminal acts, the trial court correctly assessed 25 points for OV 13. See *People v Carll*, ___ Mich App ___ ,___; ___ NW2d ___ (2018) (Docket No. 336272); slip op at 6, citing *People v Gibbs*, 299 Mich App 473, 487; 830 NW2d 821 (2013) (stating that OV 13 is properly assessed at 25 points when a defendant commits separate criminal acts that arise out of "a single criminal episode" and noting that defendant Gibbs was convicted of the armed robbery of two individual victims as well as the unarmed robbery of a jewelry store.)[5] Accordingly, Jessie has not identified any scoring error that warrants resentencing.

## II. DOCKET NO. 335738 (DEFENDANT MILLER)

### A. SUFFICIENCY OF THE EVIDENCE

---

[5] Although Jessie was convicted on an aiding and abetting theory rather than as the principal perpetrator of the criminal acts, once convicted the trial court was directed to punish him as though he had directly committed the offenses. MCL 767.39.

Miller argues that the prosecution failed to present sufficient evidence to establish his identity as a participant in the criminal episode. We disagree.

Identity is an essential element in a criminal prosecution, see *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976), and the prosecution must prove the identity of the defendant as the perpetrator of a charged offense beyond a reasonable doubt, *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). Positive identification by a witness or circumstantial evidence and reasonable inferences arising from it may be sufficient to support a conviction of a crime. See *Nowack*, 462 Mich at 400; *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). The credibility of identification testimony is for the trier of fact to resolve and this Court will not resolve it anew. See *Nowack*, 462 Mich at 400.

Two eyewitnesses unequivocally identified Miller. Both Daniel and Terry selected Miller from photographic lineups, and identified him at trial as one of the criminal actors. Daniel testified that he "was one hundred percent certain [of Miller's identity as such] at the time [of the photographic lineup] and [was] still one hundred percent certain [at the time of trial]." Terry testified that she is good with faces and that Miller's face "stood out to her." She "just remembered his face, the way his eyes were." The detective who conducted the photographic lineup for Terry testified that she selected Miller "quick[ly]" and "was confident" in her identification. These witnesses' testimony, if believed, was sufficient to establish Miller's identity as one of the participants. *Davis*, 241 Mich App at 700. Additionally, apart from Daniel's and Terry's positive and unequivocal identifications of Miller, the prosecution presented evidence that the perpetrator identified as Miller fled from the house, leaving his sweatshirt behind, and that Miller's DNA was found on the sweatshirt. This DNA evidence enhanced the reliability of the eyewitness identifications. Viewed in a light most favorable to the prosecution, the evidence was sufficient to support a finding beyond a reasonable doubt that Miller was one of the participants in the criminal episode. See *Nowack*, 462 Mich at 400.

Miller argues that the McNamaras' identification testimony was not reliable, and that he was found to be only one of three contributors of the DNA found on the sweatshirt. This challenge goes to the weight of the evidence rather than its sufficiency. *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977). Indeed, these same challenges were presented to the jury during trial. This Court "will not interfere with the jury's determinations regarding weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008); see also *Nowack*, 462 Mich at 400. Even where a witness's identification of the defendant is less than positive, the question remains one for the trier of fact. *People v Abernathy*, 39 Mich App 5, 7; 197 NW2d 106 (1972). Applying these standards, we will not disturb the jury's determination that the evidence established Miller's identity as one of the perpetrators.

## B. JUDICIAL FACT-FINDING

Miller also argues that the trial court erred by engaging in impermissible judicial fact-finding in assessing points for OVs 4, 8, and 10. We disagree. Because Miller did not object on this basis at sentencing, this claim is unpreserved and our review is limited to plain error affecting substantial rights. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015).

Miller acknowledges that the trial court imposed sentences within the guidelines range that was calculated using judicially-found facts. His only argument—that the trial court was required to consider a guidelines range that was not based on judicial fact-finding—is meritless. In *Lockridge*, our Supreme Court held that Michigan's sentencing guidelines were constitutionally deficient, in violation of the Sixth Amendment, to the extent that they "require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." *Id*. at 364. To remedy this deficiency, the Court held that the guidelines are advisory only. *Id*. at 365. Under *Lockridge*, however, trial courts are still required to "continue to consult the applicable guidelines range and take it into account when imposing a sentence," and are permitted, to score the guidelines using judicially-found facts. *Id*. at 392 n 28. In fact, the *Lockridge* Court was clear that its opinion "does nothing to undercut the requirement that the highest number of points *must* be assessed for all OVs, whether using judge-found facts or not." *Id.* As this Court explained in *Biddles*, 316 Mich App at 158,

> [t]he constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a mandatory minimum sentence range, which constitutional violation was remedied in *Lockridge* by making the guidelines *advisory*, not by eliminating judicial fact-finding.

More recently, in *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017), our Supreme Court reaffirmed its holding in *Lockridge* that "the sentencing guidelines are advisory only." *Id*. at 466. The Court articulated that, "[w]hat made the guidelines unconstitutional, in other words, was the combination of the two mandates of judicial fact-finding and adherence to the guidelines." *Id*. at 467.

In this case, Miller was sentenced more than one year after *Lockridge* was decided. The trial court expressed its awareness that the guidelines were "only advisory." There is nothing in the record to suggest that the trial court sentenced Miller in a manner inconsistent with *Lockridge*. Because the guidelines were advisory, and the trial court was permitted to rely on judicially-found facts in assessing points for OVs 4, 8, and 10, Miller has not demonstrated that an "unconstitutional constraint on judicial discretion actually impaired his Sixth Amendment right." *Lockridge*, 498 Mich at 395. Accordingly, Miller is not entitled to resentencing.

Affirmed in both docket numbers.


/s/ Mark T. Boonstra
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause

-8-